| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 50201 | **DATE** | 9/18/2012 |
| **CASE TITLE** | Dr. Kenneth Jackson vs. Board of Education of Rockford Public Schools, et al. | | |

**DOCKET ENTRY TEXT:**

For the reasons stated below, defendants' motion for summary judgment is granted. Judgment is entered in favor of defendants and against plaintiff. This case is terminated.

*Philip G. Reinhard*

■[ For further details see text below.]

Electronic Notices.

## STATEMENT - OPINION

Plaintiff, Dr. Kenneth Jackson, an African-American man over the age of forty, brings this action against defendants, Board of Education of Rockford Public Schools District No. 205 ("Board") and Linda Hernandez, individually and as an agent for the Board. Jurisdiction is proper under 28 U.S.C. § 1331.

In July 2006, plaintiff was recruited for the job of principal of Jefferson High School by Dr. Dennis Thompson, the superintendent of the Rockford School District at that time. The Board hired plaintiff for that position. Plaintiff served as principal during the 2006-07 and 2007-08 school years. Between these two school years, in August 2007, Thompson left his position as superintendent and the Board appointed defendant, Linda Hernandez, as the interim superintendent. On or about April 9, 2008, the Board voted not to renew plaintiff's contract for the upcoming school year. Plaintiff claims race, age, and sex discrimination and retaliation. Defendants move for summary judgment.

The adverse employment actions underlying plaintiff's claims are the non-renewal of his contract as principal of Jefferson in April 2008, his being placed on paid administrative leave during the 2007-08 school year while an investigation was undertaken into the complaint of the teachers' union that he had ordered hundreds of failing grades to be changed to passing grades and ordered diplomas to be issued to students who had not passed the Constitution test or certain required courses during the preceding school year, and his temporary assignment to a truant officer position during the 2007-08 school year.

"No one may teach or supervise in the public schools nor receive for teaching or supervising any part of any public school fund, who does not hold a certificate of qualification granted by the State Board of Education or by the State Teachers Certification Board and a regional superintendent of schools." 105 ILCS 5/21-1 (2008). "A provisional certificate may be issued to a person who meets the requirements for a regular . . . administrative certificate in another State. . . . A certificate earned under this plan is valid for a period of 2 years and shall not be renewed; however, the individual to whom this certificate is issued shall have passed or shall pass the examinations set forth by the State Board of Education within 9 months of the date of the issuance of the provisional certificate. Failure to pass the tests . . . shall result in the cancellation of the provisional certificate." 105 ILCS 5/21-10 (B) (2008).

Plaintiff never obtained a certificate of qualification for a principal as required under 105 ILCS 5/21-1

**STATEMENT - OPINION**

(2008). He received a provisional certificate under 105 ILCS 5/21-10 (B) (2008) but it was cancelled on August 27, 2007 for failure to pass the required tests (the Basic Skills Test and the Principal Test) within 9 months of its issuance. Before this cancellation, plaintiff had applied on August 17, 2007 for an administrative certificate with superintendent endorsement. On September 11, 2007, plaintiff was placed on paid administrative leave in conjunction with the grade changing investigation. On September 18, 2007, plaintiff was removed from his position as principal and placed in a truant officer position. On October 16, 2007, plaintiff obtained a provisional administrative certificate with superintendent endorsement and was returned to his position as principal at Jefferson. Hernandez advised plaintiff at this time that he would be required to submit proof he had passed the necessary tests (Basic Skills Test and Superintendent or Principal Test) prior to the time the Board made its staffing decisions for the 2008-09 school year or the Board would plan on getting a new principal for Jefferson for 2008-09. Plaintiff filed an EEOC charge alleging race, gender, and age discrimination and retaliation on December 13, 2007. Plaintiff failed the Basic Skills Test in early 2008. On April 9, 2008, the Board voted not to renew plaintiff's contract. Plaintiff's provisional certificate was terminated by the State Board of Education on June 30, 2008.

Defendants argue the fact plaintiff never obtained a certificate of qualification and did not pass the tests required to maintain his provisional certificate require summary judgment in defendants' favor. Plaintiff concedes he did not have the certification required by Illinois law for him to serve as a principal but claims other administrators, who were not members of his protected classes, lacked proper certification as well but were allowed to continue in their positions and were not terminated or otherwise subjected to adverse action on account of their failure to meet the requirements of the state law.

Under Illinois law, a basic condition of the Board's duty to employ and pay plaintiff was that plaintiff be certified for his position. Lewis-Connelly v. Bd of Educ. of Deerfield Public Schools, 660 N.E.2d 283, 286 (Ill. App. 1996). The sections of the School Code cited above (105 ILCS 5/21-1 and 5/21-10 (B)) must be considered a part of the employment contract between the Board and plaintiff. Id. at 287. In the absence of a currently valid certificate, "an essential condition of the contract was no longer satisfied [and] the contract was no longer binding on the Board." Id. As a purely contractual matter, the Board was justified in transferring plaintiff to a non-certified position when his original provisional certificate lapsed and in not renewing his contract when renewal time came because he did not have a certificate valid for the next school year.

Plaintiff seeks to establish a prima facie case of discrimination and retaliation under the indirect method. To do this he must show he is 1) a member of a protected class (or engaged in protected activity); 2) was meeting his employer's legitimate job performance expectations; 3) suffered an adverse employment action; and 4) similarly situated individuals who were not in the protected class (or did not engage in protected activity) were treated more favorably. See Coleman v. Donahoe, 667 F.3d 835, 845 (7th Cir. 2012). Once the prima facie case is established, the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for its action. Id. When it does so, the burden shifts back to plaintiff to present evidence that the stated reason is a pretext. Id. When, as here, failure to meet legitimate expectations is cited as the justification for the adverse employment action "the performance element of the prima facie case cannot be separated from the question whether the employer proffered a nonpretextual explanation for its challenged conduct." Duncan v. Fleetwood Motor Homes of Indiana, Inc., 518 F.3d 486, 491 (7th Cir.2008). In other words, were the cited "legitimate expectations" actually legitimate or were they themselves the pretext. The standard for granting summary judgment is whether viewing the evidence in the light most favorable to the plaintiff, there is no genuine issue of material fact that must be decided by a jury. Id.

On the face of it, not maintaining a state-required certification for a job would appear to be a failure to meet legitimate job performance expectations. Illinois law requires a regular administrative certificate be obtained by grant of the "State Board of Education or by the State Teachers Certification Board and a regional superintendent of schools." It provides for a provisional certificate for a limited period of time with certain

requirements to maintain it and to ultimately obtain a regular certificate. Plaintiff did not meet the requirements to maintain his original provisional certificate with general administrative endorsement (this endorsement allows serving as a principal) and it lapsed. When he obtained a second provisional certificate with superintendent endorsement, he was reinstated as principal and served as principal under its authority. As of the time a decision on his contract renewal needed to be made, plaintiff had not passed the tests needed to continue under his second provisional certificate.

Plaintiff's argument is that the Board ignored the state law in the cases of other administrators so it was obligated to ignore it as to him and that its failure to do so evidences the Board's race, gender and age bias (and retaliatory intentions) against him. Plaintiff does not cite any cases where a court has held that an employer's refusal to violate state law evenhandedly rendered the employer liable to an employee for failing to violate it on the employee's behalf. He asserts the defendants implemented certain accommodations (assigning properly-certificated "mentors" or "sham" administrators) to allow others to work as administrators without proper certification but did not do so for him. He does not claim he asked for such an accommodation.

Plaintiff contends Dr. Thompson, Dr. Sheffield, Earl Hernandez, Renneth Richardson, Mike Campbell and Linda Cooper all worked for the Board as administrators without proper certification. Dr. Thompson was the superintendent at the time of plaintiff's hire. He apparently served without certification for many months. The State Board of Education apparently never notified the Board that Dr. Thompson was not certified during that period. Dr. Fairgrieves, the Regional Superintendent of Schools, whose office dealt with certifications, testified in his deposition that Dr. Thompson qualified for a certificate but was slow in getting in his paperwork. While plaintiff maintains he also was qualified, the State Board of Education determined he needed to pass two tests to maintain his provisional certification and obtain regular certification. He never passed both tests and, in fact, failed the Basic Skills Test. Plaintiff is not similarly situated to Dr. Thompson.

Dr. Sheffield was hired by the Board as superintendent after plaintiff's non-renewal. The evidence shows she was uncertified at the time she was hired, that the State Board notified Dr. Fairgrieves of this fact and that the Board appointed defendant, Linda Hernandez, to serve as superintendent for a brief while until Dr. Sheffield passed the required tests and obtained her certification. Plaintiff never passed both required tests. Plaintiff is not similarly situated to Dr. Sheffield.

Earl Hernandez had a teaching certificate but not an administrative certificate. Plaintiff claims Earl Hernandez served as principal of East High School, under the title of Chief Operating Officer ("COO"), without having the necessary administrative certificate. At the time, Todd France was the principal of East High School but plaintiff maintains Earl Hernandez exercised the functions of principal, including administrative tasks requiring an administrative certificate. Earl Hernandez's deposition testimony was that he performed duties as the COO (he also refers to this position as a "12-month Dean") to "handle all of the functions of the building so that the principal could devote all his efforts to making sure teachers were evaluated and that the academic side of the building was running right." He handled "anything that had to do with any part of the operation of the school that the principal didn't handle which was the academic side." Once he assumed the COO position, he testified the principal, Todd France, was able to evaluate close to 100 teachers in the first year.

Plaintiff's evidence is only his own observation that Earl Hernandez attended principal meetings and his statement Earl Hernandez had evaluated a teacher named Jane Eckerhardt. [According to Dr. Fairgrieve's deposition testimony, teacher evaluation could only be done by certified administrators and the evaluation could be disregarded as non-authoritative if done by someone else and challenged by the teacher.] This evaluation is not included in the record. Earl Hernandez testified he attended principal meetings that dealt with facilities issues but that France attended the academic-focused meetings. Plaintiff's evidence, and all of the evidence taken most favorably to the plaintiff, does not support a claim Earl Hernandez was serving as an uncertified administrator.

**STATEMENT - OPINION**

Plaintiff maintains that Renneth Richardson and Michael Campbell both served as principals without administrative certificates. His evidence is a newspaper article in which the Board's attorney is quoted. This is inadmissible hearsay and will not be considered. See Cody v. Harris, 409 F.3d 853, 860 (7th Cir. 2005). Even if it were considered, the statement does not support the claim Richardson and Campbell were principals and, in fact, expressly states they were not. He presents no evidence that the designated principals at the schools where Richardson and Campbell served were not the actual principals.

Plaintiff states Linda Cooper was placed as an assistant principal and Kennedy Middle School effective September 9, 2006 but did not earn her administrative certificate until October 16, 2008. In support of this claim, he cites to paragraph 37 of his statement of facts. Paragraph 37 states: "During Dr. Jackson's employment, the School District employed numerous teachers and administrators without valid Illinois certification." It does not say anything about Linda Cooper being an assistant principal. Paragraph 37 references certain exhibits which contain the name Linda Cooper, one of which is a payroll and personnel information sheet with an effective date of 9/13/06 which states under the word "Subject" the entry "007611 Ass't Prin." Another exhibit, labeled "Current Educator Credentials" shows a Linda L. Cooper as having an administrative certificate issued 10/16/2008. However, neither exhibit addresses the certification status of Linda Cooper prior to 10/16/2008 nor does anything in the record indicate she had duties requiring an administrative certificate.

Plaintiff has not presented evidence that shows requiring him to have an administrative certificate was not a legitimate job requirement. He has not shown that similarly situated uncertified administrators were treated more favorably or that his lack of certification was a pretext for discrimination. Accordingly, he has failed to establish a prima facie case under the indirect method for all of his Title VII (race, gender, retaliation), section 1981 and section 1983 and ADEA claims.

Plaintiff also claims he has established a prima facie case under the direct method. The direct method requires plaintiff to produce either direct or circumstantial evidence that would allow a jury to infer discrimination motivated the adverse employment action. Dass v. Chicago Bd of Educ., 675 F.3d 1060, 1071 (7th Cir. 2012). Plaintiff does not present any direct evidence but rather relies on circumstantial evidence. To defeat summary judgment using circumstantial evidence, plaintiff is only required to present evidence from which a rational trier of fact could reasonably infer the adverse employment action was taken because plaintiff was a member of a protected class or engaged in protected activity. See id. Three types of circumstantial evidence of intentional discrimination are recognized: 1) suspicious timing, ambiguous statements, behavior or comments directed at other employees in the protected class (or who engaged in protected activity), and other "bits and pieces" from which an inference of discriminatory intent can be drawn; 2) evidence similarly situated employees outside the protected class (or who did not engage in protected activity) received systematically better treatment; and 3) evidence the employer's stated reason for the adverse action was a pretext for discrimination. Id.

As discussed above, the evidence does not show similarly situated employees received better treatment nor that the stated reason for the non-renewal was a pretext. Plaintiff argues the grade change investigation instigated by Hernandez prior to his temporary assignment to the truant officer position, Hernandez's negative and false statements about plaintiff, and her false and negative performance evaluation of plaintiff are sufficient circumstantial evidence to allow an inference of discriminatory intent. The teacher's union had filed a grievance concerning plaintiff's changing a number of students' grades from "F" to "D". Jason Cummins reported in his declaration that Hernandez had told him plaintiff had gotten his doctorate from a fake, unaccredited online school in Jamaica, that he could not read or write and had gotten someone else to complete his doctorate and that plaintiff had lied about serving with the Marines during the Vietnam War. Hernandez prepared an evaluation of plaintiff in which she rated his performance "unsatisfactory".

"The circumstantial evidence a plaintiff presents must point directly to a discriminatory reason for the employer's action." Id. (internal quotation marks and citations omitted.) It is undisputed the grade change

investigation occurred after the teachers' union filed a grievance concerning the grade changes. While the comments attributed to Hernandez and her evaluation of plaintiff indicate she wanted to get rid of him, nothing about them shows them to be motivated by race, gender, age, or retaliation as opposed to personal animosity or a belief he was not suited to his position. See id. at 1072 ("There is no doubt that Jeske wanted to get rid of Dass, but Dass's evidence does not create a genuine factual issue as to whether Jeske was motivated by national origin discrimination.").

Plaintiff claims retaliation by Hernandez when she "intensified a campaign to harass, intimidate" him after he filed an EEOC charge on November 19, 2007. He cites Hernandez's request for additional police presence at Jefferson, assignment of two experienced administrators to Jefferson who would report to her not plaintiff, requiring plaintiff to submit written daily updates to her and requiring him to spend at least 50% of the day in the halls or cafeteria as evidence of this retaliation ultimately leading to the adverse employment action of his contract non-renewal. Plaintiff argues similarly-situated employees (the other administrators he claims lacked proper certification discussed above) who did not file EEOC charges or engage in other protected activity, "all worked off-certificate, and were not suspended or terminated." However, as discussed above, plaintiff has not shown that similarly situated uncertified administrators were treated more favorably or that his lack of certification was a pretext for his contract not being renewed. See Coleman, 667 F.3d at 845. He does not explain why the other factors he cites (more police, spending 50% of his time in the halls or cafeteria, etc.) are adverse actions nor does he show other similarly situated administrators received different treatment.

Plaintiff contends Hernandez subjected him to a hostile work environment. To survive summary judgment on a hostile work environment claim, plaintiff must demonstrate 1) that his work environment was both objectively and subjectively hostile; 2) that the harassment was based on his membership in a protected class or his protected activity; 3) that the conduct was either severe or pervasive; and 4) that there is a basis for employer liability. Jajeh v. County of Cook, 678 F.3d 560, 566 (7th Cir. 2012). He asserts the grade change investigation, the temporary assignment to the truant officer position, the placement of two administrators at Jefferson who reported directly to Hernandez and operated at her direction, requiring plaintiff to spend more than half of his time walking the hallways and requiring him to send daily progress reports constitute the hostile environment. However, there is nothing objectively hostile about these actions, nothing indicates they were motivated by plaintiff's membership in a protected class or his protected activity. They cannot be characterized as severe or pervasive. Plaintiff's hostile work environment claim fails.

Plaintiff claims the Board is liable under a "cat's paw" theory for Hernandez's discriminatory and retaliatory actions and also that defendants violated Title VI by engaging in race discrimination while receiving federal funds. However, the elements of a prima facie case are the same under Title VI as they are under Title VII. Brewer v. Bd of Trustees of the Univ. of Ill., 479 F.3d 908, 921 (7th Cir.2007). The Title VI claim fails for the same reasons discussed above for the Title VII claims. Since Hernandez is not liable to plaintiff for anything, the cat's paw theory of liability for the Board also fails.

For the foregoing reasons, defendants' motion for summary judgment is granted. Judgment is entered in favor of defendants and against plaintiff. This case is terminated.